# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                             Case No. 10-CR-85

**TAMMY YAMBOR**
    **Defendant.**

## FINDINGS OF FACT AND ORDER

This case is before the court on a petition for revocation of defendant Tammy Yambor's probation. I held a revocation hearing on February 22, 2011, then permitted the parties to file briefs. The matter is now fully briefed and ready for decision.

## I. ORIGINAL PROCEEDINGS

On September 29, 2010, I sentenced defendant to 3 years' probation on her guilty plea to interstate transportation of funds obtained by fraud, 18 U.S.C. § 2314. The charges arose out of a scheme defendant executed to steal from her then-employer, Waukesha Health Care ("WHC"). Defendant's scheme, which lasted from 2001 to 2005, operated in three ways. First, she created and submitted fraudulent vendor invoices, then caused the payments to be delivered to her bank and applied to her personal credit card account. Second, she submitted false expense reports in her own name and, on five occasions, in the names of two WHC physicians. Finally, she submitted false tuition reimbursement requests, causing WHC to issue her tuition reimbursement payments to which she was not entitled.

The scheme cost WHC nearly $200,000 and resulted in an advisory sentencing guideline range of 18-24 months in prison. However, for several reasons, including defendant's

lack of prior record, her payment of full restitution prior to sentencing, her mental health issues and treatment, and her good conduct in the years since her commission of the crime, including obtaining new employment with the Medical College of Wisconsin ("MCW") in 2006, I found a sentence of probation with a condition of home confinement sufficient. I set forth the reasons for the sentence imposed in a written sentencing memorandum filed on October 2, 2010.

## II. REVOCATION PROCEEDINGS

On December 21, 2010, defendant's probation officer petitioned the court to issue a summons based on an alleged violation of the conditions of probation. Specifically, the petition alleged that defendant violated the condition that she not commit another federal, state, or local crime, by submitting to MCW a falsified version of the court's sentencing memorandum. The petition alleged that MCW requested documentation related to defendant's conviction and probation, and defendant submitted a revised version of my October 2, 2010 sentencing memorandum, which, inter alia, omitted any reference to the tuition reimbursement fraud she committed while employed by WHC. When confronted about her actions, defendant admitted falsifying the memo, indicating that she did not want MCW to find out about the tuition reimbursement fraud at WHC because of similar conduct she engaged in while working for MCW in 2006. The probation office took the position that defendant engaged in mail fraud when she fraudulently obtained tuition reimbursement in 2006, and that while on probation in this case she furthered and attempted to conceal that fraud by falsifying the court's sentencing memorandum.

I scheduled the case for a revocation hearing on February 22, 2011. In a pre-hearing submission, defendant admitted that she provided MCW with an "edited" version of the sentencing memorandum, and that she was responsible for the revisions made to the

2

document. However, she denied doing so as a means of concealing tuition reimbursement fraud from 2006. Defendant attached to the submission a letter she wrote to MCW Human Resources ("HR") Director Katie Kassulke on November 6, 2010, in which she presented her version of events. Defendant stated that in August 2006 she discussed taking a class at Marquette University ("MU") with her then-supervisor, Joan Berta. Berta advised her to fill out and submit a tuition reimbursement form (even though defendant had not yet been re-admitted to MU for the class) so it would be in place if everything worked out. Due to an outstanding balance at MU, defendant was not able to be readmitted. In December 2006, Berta asked defendant for her class grades so she could send through the request for reimbursement. Not wanting to disappoint Berta, defendant stated that she provided an old copy of grades and an invoice, which Berta submitted to HR. Defendant stated that she then realized that she needed to explain that she had not been re-admitted to Marquette. According to defendant, Berta spoke to a Dr. Wackym, the department head, and they agreed not to ask HR for the forms back or otherwise tell HR what had happened, as that would raise a "red flag." Defendant stated that she was not comfortable with that course of action, but Berta and Wackym were adamant that she trust them. Berta assured defendant that everything would be fine, and that she had done this for others in the past. MCW sent defendant a reimbursement check, but she tore it up. In March or April 2007, Berta called defendant into her office, upset that defendant had not cashed the check, and stating that another would be issued. Defendant cashed the replacement check in the amount of $2550. Defendant wrote that this was the only time she received reimbursement from MCW to which she was not entitled. She concluded the letter by stating that Berta was untrustworthy, unethical, and mean to subordinates. (Def. Ex. 1000; R. 16-1.)

## III.  THE REVOCATION HEARING

At the hearing, the government presented testimony from FBI Special Agent Sue Blish and MCW HR director Kassulke, along with various exhibits pertaining to the allegations of tuition reimbursement fraud at WHC and MCW.  Defendant introduced her November 2006 letter to Kassulke (Def. Ex. 1000), but she did not testify or submit additional evidence.

**A.    Tuition Reimbursement Fraud at WHC**

Through Blish, the government reviewed the methods defendant employed in committing tuition reimbursement fraud when employed at WHC.  Specifically, on December 11, 2001, and June 3, 2005, defendant submitted fraudulent tuition reimbursement requests, which overstated her credit hours, thereby causing WHC to issue her $3416 in tuition reimbursement payments to which she was not entitled.  (Govt. Ex. 1.)  As part of this fraud, defendant submitted a forged MU invoice.  (Govt. Ex. 2.)

**B.    Alleged Tuition Reimbursement Fraud at MCW**

On December 12, 2006, defendant submitted a tuition reimbursement application to MCW, in which she sought $2550 for an MU course entitled "Health Care Program Developments" held from December 18, 2006 to January 15, 2007.  (Govt. Ex. 3.)  In support of that application, in February 2007 defendant submitted an MU invoice and grade report pertaining to the course.[1]  (Govt. Ex. 5.)  However, records from MU indicate that defendant did not take this course or, indeed, any courses after 2004.  (Govt. Ex. 12.)   On April 6, 2007,

---

[1] In her November 2006 letter to Kassulke, defendant wrote that she submitted "an old copy of grades and invoice" in support of the application.  (R. 16-1 at 1.)  The records offered by the government at the hearing showed that the documents defendant submitted were not old but rather purported to pertain to the December 2006 class she never took.  She even provided a transcript indicating that she earned an "A" in this course.  (Govt. Ex. 5 at 4.)

4

MCW sent defendant a check for $2550. (Govt. Ex. 6.) Defendant did not cash this check or the replacement MCW mailed on or about August 30, 2007 (Govt. Ex. 7), but she did, on or about February 11, 2008, cash a second replacement check sent on February 4, 2008 (Govt. Ex. 8).

Defendant pleaded guilty to the underlying offense in this case on May 25, 2010, and sentencing was set for September 17, 2010.[2] On August 20, 2010, defendant submitted a new tuition reimbursement application to MCW, seeking $2700 for a course entitled "Leadership in Public Service" meeting from August 30, 2010, to December 3, 2010. (Govt. Ex. 9.) MCW requested a copy of defendant's course requirements (Govt. Ex. 10), and on or about September 8, 2010, defendant provided a print-out of MU's MBA program (Govt. Ex. 11). As the MU records confirm, defendant did not attend this or any other course after 2004. (Govt. Ex. 12.)[3] MCW did not pay on this application before defendant's November 2010 separation from employment at MCW.

**C.    Submission of the Forged Sentencing Memorandum**

On or about May 17, 2010, defendant met with Kassulke and advised that she had been charged with a crime (i.e., the underlying offense in this case). Kassulke asked defendant to provide a copy of her plea agreement; defendant repeatedly failed to provide one, so MCW eventually obtained a copy from the court's ECF system. After Kassulke received a copy of the plea agreement, which set forth the facts of defendant's theft from WHC, including the tuition reimbursement fraud, she asked for an audit of defendant's tuition reimbursement at

---

[2]The sentencing hearing was later adjourned to September 29, 2010.

[3]The government confirmed the accuracy of the records by having an FBI agent interview MU's associate registrar and director of graduate admissions. (R. 20-1, 20-2.)

MCW. Through this audit, MCW learned of defendant's fraudulent 2006 and 2010 applications.

The day after defendant was sentenced, MCW asked her to provide documentation regarding her sentence, and in response defendant submitted the falsified copy of the court's sentencing memorandum. (Govt. 16.) In comparing the version defendant provided with the original on the court's ECF system, Kassulke realized that the forged version omitted all reference to the tuition fraud defendant committed at WHC. (See Govt. Ex. 17, a "red-lined" version noting all of the changes defendant made.)

Kassulke met with defendant on November 5, 2010, and asked defendant if she had attended the class for which she obtained reimbursement. Defendant initially claimed that she had, but then admitted that she had not. Kassulke also confronted defendant about the forged sentencing memorandum, and defendant initially denied knowing it had been altered, stating that she got it from her attorney. Kassulke asked how the alterations happened, and defendant stated that she was scared.[4]

MCW suspended defendant and asked for a written statement regarding her conduct. In response, defendant submitted the November 6, 2010, letter discussed above. (Def. Ex. 1000.) In that letter, defendant said nothing about her 2010 tuition reimbursement application and, as noted, attempted to blame Berta and Wackym for the events in 2006 and 2007. Defendant said nothing about Berta and Wackym being responsible for the earlier fraud during the November 5, 2010 meeting. MCW decided to terminate defendant's employment for dishonesty, but offered her the option of resignation conditioned on her repayment of the $2550

---

[4]As indicated in the revocation petition, on November 9, 2010, defendant admitted to her probation officer that she submitted the forged sentencing memorandum to prevent MCW from finding out about her tuition fraud.

6

she improperly obtained. (Govt. Ex. 13, 14.) As part of her separation agreement, defendant promised "not to share any facts or further information about the tuition reimbursement money I took or the documents I falsified to any members of the Medical College of Wisconsin faculty, staff or any members who work at the affiliate hospitals." (Govt. Ex. 14 at 1.)

## IV. DISCUSSION

The government argues that defendant executed a mail fraud scheme against MCW by submitting the falsified sentencing memorandum, and that this conduct also violated Wisconsin's forgery statute, Wis. Stat. § 943.38(1)(b). Defendant denies that she engaged in mail fraud and argues that the court should not address the forgery allegation, as it was not included in the revocation petition or hearing report. For the reasons that follow, I find that defendant has violated the condition of probation that she not commit another federal, state, or local crime. I will accordingly schedule the matter for a hearing to address the appropriate sanction.

### A. Applicable Legal Standards

Probationers facing revocation are entitled to certain rights under the Due Process Clause and Fed. R. Crim. P. 32.1(b)(2), including written notice of the alleged violation; disclosure of the evidence against them; an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; notice of their right to retain counsel or to request that counsel be appointed; and an opportunity to make a statement and present any information in mitigation. See United States v. Kirtley, 5 F.3d 1110, 1112-13 (7th Cir. 1993). Revocation proceedings are otherwise informal; the rules of evidence generally do not apply, and the court

7

need only be "'reasonably satisfied" that the probationer has violated her conditions in order to revoke. United States v. Hopson, 39 F.3d 795, 801 (7th Cir. 1994); see also United States v. Warner, 830 F.2d 651, 655 (7th Cir. 1987) ("A district court requires little evidence to find that a probationer has violated his probation conditions.").

**B.    Analysis**

**1.    Mail Fraud**

I am reasonably satisfied that defendant's conduct constitutes mail fraud. The elements of mail fraud are: (1) a scheme to defraud; (2) an intent to defraud; and (3) use of the mails in furtherance of the scheme. United States v. Leahy, 464 F.3d 773, 786 (7th Cir. 2006). The evidence supports a finding that defendant engaged in mail fraud from 2006 to 2008. In December 2006 and February 2007, she submitted a tuition reimbursement application and supporting documents containing materially false statements regarding her enrollment in the class to which the application pertained. Specifically, defendant claimed that she enrolled in the "Health Care Program Developments" class at MU from December 18, 2006 to January 15, 2007, when in fact she had taken no courses at MU since 2004. See id. ("A scheme to defraud requires 'the making of a false statement or material misrepresentation, or the concealment of material fact.'") (quoting United States v. Stephens, 421 F.3d 503, 507 (7th Cir. 2005)). Those misrepresentations caused MCW to mail defendant a check for $2550, which she cashed in February 2008. See United States v. Brewer, 807 F.2d 895, 897 (11th Cir. 1987) (stating that the jurisdictional elements of mail fraud are: (1) the defendant "caused" the use of the mails and (2) the mails were used for the purpose of executing the scheme).

The evidence also supports a finding that defendant attempted to perpetuate further

8

such fraud against MCW in 2010. On August 20, 2010, about a month before her sentencing hearing in this case, she submitted another fraudulent tuition reimbursement application to MCW, this time seeking $2700 for a course set for August 30, 2010, to December 3, 2010. On MCW's request, she submitted follow-up documentation in support of her request in September 2010, after the course allegedly started, despite the fact that she took no classes at MU after 2004. MCW learned of defendant's fraud and ended her employment before it paid out on this application.

Of course, the fraudulent 2006 and 2010 applications pre-date defendant's placement on probation and thus cannot themselves serve as grounds for revocation. The government argues that defendant acted to conceal her scheme by submitting the falsified sentencing memorandum, and the evidence reasonably supports that contention. Courts have held that communications designed to conceal a theft or lull the victim of a fraud may be considered part of a scheme. As the Tenth Circuit explained in United States v. Redcorn, 528 F.3d 727, 741 (10th Cir. 2008) (internal citations and quote marks omitted):

> The . . . notion of the post-fraud "lulling letter" as relating to an essential part of a scheme to defraud is well accepted. Even after the schemer has extracted what he wants from his victims, a communication will be mail fraud (or wire fraud) if it is intended to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely. It has long been understood that [a]voidance of detection and prevention of recovery of money lost by the victims are within, and often a material part of, the illegal scheme. Further profit from the scheme to defraud, as such, may be over, and yet the scheme itself be not ended.

See also United States v. Brocksmith, 991 F.2d 1363, 1367-68 (7th Cir. 1993) ("Use of the mails to lull victims into a false sense of security, we have held, violates the mail fraud statute, even if it occurs after the money has been fraudulently obtained."). It is true that the operative mailings here occurred before defendant was placed on probation – and there is no indication

9

that defendant mailed the falsified sentencing memorandum to MCW – but there is no rule that a fraud scheme cannot include post-mailing acts. As the Seventh Circuit said in United States v. Boone, 628 F.3d 927, 935 (7th Cir. 2010):

> The fortuity of the timing of the mailing—whether it occurred at the start or the conclusion of a fraudulent scheme—cannot be the determining factor as to whether the government can produce evidence of the scheme. Such a rule would make no sense. The government must prove both the existence of a scheme and that there was a mailing in furtherance of that scheme. The mailing is a jurisdictional prerequisite which must be satisfied in order to invoke federal criminal prosecution, but it does not constitute an endpoint beyond which the government may not provide evidence of the scheme. The government is entitled to establish the scheme and can rely on evidence that occurred before and after the mailing in order to do so.

Defendant's submission of the falsified sentencing memorandum is reasonably considered part of the scheme. It was designed to conceal her completed fraud in 2006-2008, and to prevent further scrutiny of her pending 2010 application.

In her brief, defendant admits that she revised the court's sentencing memorandum, acknowledges the wrongfulness of this conduct, and concedes that it merits some form of sanction. However, she denies that she engaged in this conduct as part of a mail fraud scheme and argues that revocation is not an appropriate sanction.[5] In support of her claim that she did not commit mail fraud against MCW, defendant relies on her November 6, 2010 letter to Kassulke. As indicated above, in that letter defendant claimed that her supervisor and department head ratified her submission of the fraudulent tuition reimbursement application

---

[5] Defendant does not appear to admit a violation of any specific condition of probation, so it is unclear the basis on which the court could (under her version) impose a sanction under 18 U.S.C. § 3565(a). Nor does she state what that alternative sanction might be. Instead, she somewhat vaguely states that "assuming a violation is found to have occurred, it would be of a Grade 'C' type." (Def.'s Br. at 7.)

10

in 2006.[6]

For several reasons, I find defendant's explanation unconvincing. First, it came in the form of a self-serving letter defendant submitted in order to try to save her job after MCW uncovered her fraud. Second, other than generally demeaning her character and management ability, defendant offers no explanation why Berta would have engaged in such conduct.[7] Third, the objective evidence rebuts defendant's claim that she merely went along with Berta's scheme. For instance, contrary to defendant's claim in the letter that she submitted an "old copy" of grades and invoices, expecting Berta to return the application, defendant actually submitted to MCW what purported to be a current invoice and grade report. She even gave herself an "A" in the course she never took. Fourth, defendant's conduct at MCW mirrors her admitted tuition reimbursement fraud while employed by WHC. The fraudulent invoice she submitted to WHC in 2005 (Govt. Ex. 2) is substantially similar to the fake invoice she submitted to MCW in 2006 (Govt. Ex. 3 at 2). And finally, defendant has no response to the evidence that she attempted to defraud MCW again in 2010. Berta left MCW prior to the 2010 application, so there can be no claim that she ratified this conduct. Because the evidence reasonably supports the notion that defendant committed acts in furtherance of a mail fraud scheme while on probation, I find that she has violated the condition that she not commit another federal crime.

**2. Forgery**

I am also reasonably satisfied that defendant's conduct constitutes forgery under Wis.

---

[6]Because the rules of evidence do not apply at a revocation hearing, I admitted defendant's November 2010 letter.

[7]Berta has, in a post-hearing interview, denied defendant's allegation.

11

Stat. § 943.38(1)(b), which provides: "Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class H felony: . . . (b) A public record or a certified or authenticated copy thereof[.]" The evidence shows that defendant altered the court's sentencing memorandum, a public record, and that she did so in order to defraud MCW by concealing her tuition reimbursement fraud.

In her brief, defendant offers no argument that her conduct does not constitute forgery under Wisconsin law; rather, she notes that state law forgery was not specifically mentioned in the revocation petition and hearing report, and argues that in advancing this theory the government is improperly broadening the allegations. However, defendant cites no authority for the proposition that, in addition to written notice of the probation condition she allegedly violated, along with the facts constituting the alleged violation, she must also receive a written explanation of the legal conclusions to be drawn from those facts. In the revocation petition and hearing report, the probation office set forth in detail the conduct at issue and the condition it allegedly violated. See Kirby, 5 F.3d at 1113 (finding sufficient a petition that advised the probationer of the specific condition that he violated, the general dates of the violation, and some basic facts regarding the violation).

Further, at the revocation hearing, the possibility that this conduct constituted a violation of some other law, such as the forgery statute, was discussed, and the parties were given a chance to brief the issue. Thus, any requirement that defendant be given notice and an opportunity to be heard regarding this additional legal theory has been satisfied. Finally, defendant appears to concede that her conduct is sanctionable, if only as a C grade violation.

12

Thus, she has invited the government and the court to inquire as what other law violation might be involved.

## V. CONCLUSION

For the foregoing reasons, the court finds that defendant violated the condition of probation that she not commit another federal, state, or local crime. The parties in their briefs discuss possible sanctions. However, the court will conduct a hearing at which counsel and defendant may be heard before imposing a sanction.

**THEREFORE, IT IS ORDERED** that the case is set for **HEARING** on **Wednesday, June 22, 2011, at 2:00 p.m**.

Dated at Milwaukee, Wisconsin, this 1st day of June, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge